IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00366-MR-WCM

| | |
|---|---|
| JONATHAN DANIEL WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NORTH CAROLINA DEPARTMENT ) <br> OF PUBLIC SAFETY – STATE ) <br> HIGHWAY PATROL; RANDY L. ) <br> DEATON; BRANDON S. SMITH; ) <br> HAROLD F. STINES, JR.; AARON C. ) <br> AMMONS; and CHRISTOPHER W. ) <br> COOK, ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 41].

## I. PROCEDURAL BACKGROUND

The Plaintiff Jonathan Daniel Williams, a former North Carolina State Trooper, commenced this action on December 28, 2023, alleging claims for failure to provide a reasonable religious accommodation and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); claims for failure to accommodate a disability under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117

("ADA"); and claims for violations of the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff-1 ("GINA"). [Doc. 1]. The Plaintiff names as a Defendant "Department of Public Safety – State of NC -- State Highway Patrol," which the Court will refer to as the North Carolina Department of Public Safety, or "DPS."[1] The Plaintiff also names as Defendants his supervising officers: Randy L. Deaton; Brandon S. Smith; Harold F. Stines, Jr.; Aaron C. Ammons; and Christopher W. Cook.[2]

On November 7, 2025, the Defendants filed the present motion, seeking summary judgment as to all claims. [Doc. 41]. Thereafter, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court entered an Order advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 44]. On December 10, 2025, the Plaintiff filed a Response in Opposition [Doc. 46], a Statement of Material Facts [Doc. 47], a Statement of Disputed Material Facts [Doc. 48],

---

[1] At all times relevant to this action, the North Carolina State Highway Patrol ("NCSHP") was a division of DPS. Effective July 1, 2025, the NCSHP began operating as an independent state agency. See N.C. Gen. Stat. § 143B-1705, as amended by 2024 N.C. Sess. Laws 2024-57, § 3E.1(p), effective July 1, 2025.

[2] The Plaintiff's Complaint does not specify whether these latter Defendants are sued in their individual or official capacities.

and a number of exhibits [Docs. 49, 50]. On December 17, 2025, the Defendants filed their Reply. [Doc. 51].

Having been fully briefed, this matter is ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020) (quoting News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)). When ruling on a motion for summary judgment, the Court does not "weigh the evidence or make credibility determinations." Guessous v. Fairview Prop.

Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (quoting Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 568-69 (4th Cir. 2015)). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the nonmoving party, who must convince the Court that a triable issue does exist. Id.

In considering the motion for summary judgment, the Court must view the pleadings and materials presented in the "light most favorable" to the nonmovant and must "draw all reasonable inferences" in the nonmovant's favor. Adams v. UNC Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## III. FACTUAL BACKGROUND

Viewing the forecasts of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

In 2021, the Plaintiff was employed as a North Carolina State Trooper, assigned to Troop G, District G-5. [Doc. 49-2 at 32: Williams Decl. at ¶ 2].

On July 29, 2021, Governor Roy Cooper issued Executive Order No. 224, which implemented various measures to address the ongoing COVID-19 pandemic. [See Doc. 45-1: Executive Order No. 224]. In accordance with this Executive Order, on September 1, 2021, DPS issued DPS HR-600-

04, a department-wide policy addressing vaccines, testing requirements, and requests for accommodation. [Doc. 45-3: DPS Policy DPS-HR-600-04]. This policy specifically required all DPS employees—including state troopers—to either be vaccinated or be subjected to regular "accepted diagnostic testing" for COVID-19. [Id. at 4-5]. The policy defined "accepted diagnostic testing" as including "an antigen or molecular test (nucleic acid amplification test [NAAT] or RT-PCR) authorized by the Food and Drug Administration" [Id. at 1] and required unvaccinated employees to produce a negative COVID-19 test result from an approved testing site within the last seven days before the beginning of their shift. [Id. at 5]. The DPS policy provided that workers could submit requests for a reasonable accommodation to the policy's requirements "due to a sincerely held religious belief, a medical condition, or other reason." [Id. at 10].

The Plaintiff initially complied with the DPS policy, submitting to nasal swab testing on September 4 and September 16, 2021. [See Doc. 49-2 at 34: Williams Decl. at ¶¶ 10-17; Doc. 45-8 at 1-2: Test Results]. After the second test, however, the Plaintiff became "convicted spiritually that what [he] had done was wrong" and that the nasal swab testing "went against [his] conscience and beliefs." [Doc. 49-2 at 34: Williams Decl. at ¶ 16]. The

5

Plaintiff did not submit to any further nasal swab testing after September 2021. [Id. at ¶ 17].

Throughout late September, October, and November 2021, the Plaintiff spent significant time in prayer, reading Scripture, and seeking spiritual counsel. [Id. at 35 ¶ 18]. Specifically with respect to nasal swab testing, the Plaintiff learned more about the chemical used on nasal swab tests, "which further violated [his] conscience." [Id. at ¶ 21]. He also spoke to family friends, fellow troopers, and his brother (who is also a minister), all of whom "helped [him] process and strengthen [his] conviction that [he] could not submit to invasive testing." [Id. at ¶ 22]. By early October, the Plaintiff "knew firmly in [his] heart that nasal swab testing was morally and spiritually wrong for [him]." [Id. at ¶ 23].

On November 10, 2021, one of the Plaintiff's supervisors, the Defendant Sergeant Christopher W. Cook ("Sergeant Cook"), texted the Plaintiff, asking when he had last uploaded a COVID test result in the district's tracker system. [Doc. 45-7: Cook Decl. at ¶ 4]. The Plaintiff did not reply to the text, as he was in the middle of a traffic stop. [Doc. 49-2 at 36: Williams Decl. at ¶ 28]. Sergeant Cook then called the Plaintiff and asked him when he had last uploaded a test result. The Plaintiff replied that it had been "a while." [Id. at ¶ 29]. Sergeant Cook told the Plaintiff to "get up" with

another trooper and get COVID tested, to which the Plaintiff said, "Okay." [Id. at ¶ 30].

On November 18, 2021, Sergeant Cook texted the Plaintiff while the Plaintiff was on vacation to remind him to upload his test results. [Doc. 45-7: Cook Decl. at ¶ 4]. The Plaintiff responded that he was going to send an email advising that he would no longer submit to weekly tests. [Id.]. On November 21, 2021, Sergeant Cook phoned the Plaintiff to follow up on the testing and informed him that if he did not comply with the DPS testing policy, the disciplinary process would begin. [Id.].

On November 22, 2021, the Plaintiff submitted a religious accommodation request. [Doc. 45-4: Religious Exemption Form]. Specifically, the Plaintiff stated, in pertinent part, that "the administration of vaccines such as Covid-19 vaccine and repetitive invasive testing such as Covid19 Testing, [was] contrary to [his] sincerely held religious beliefs." [Id. at 1].

The following day, on November 23, 2021, a personnel complaint was initiated against the Plaintiff for failure to comply with Executive Order 224. [Doc. 45-9: Barger Decl. at ¶ 3].

The Plaintiff received a letter from DPS denying his religious exemption request on December 23, 2021.[3] [Doc. 45-11 at 3: Verified Response to Request for Admission (RFA) No. 2; Doc. 45-5: DPS HR Letter]. With respect to the Plaintiff's objection to vaccination, DPS noted in this letter that weekly testing was offered as an alternative to vaccination. [Doc. 45-5: DPS HR Letter at 3]. With respect to the Plaintiff's objection to nasal swab testing, DPS stated in this letter that Executive Order 224 and the DPS policy both "accommodate non-invasive saliva tests." [Id.]. As such, DPS stated, the Plaintiff's request to be exempted from weekly testing was denied. [Id.].

The Plaintiff determined that saliva testing would not violate his religious convictions and thus began saliva testing on December 30, 2021. [Doc. 49-2 at 37: Williams Decl. at ¶ 41; Doc. 50 at 4: COVID-19 Test Report dated 12/31/21]. He submitted to saliva testing again on January 10, 2022 and January 18, 2022. [Doc. 49-2 at 37: Williams Decl. at ¶ 41; Doc. 50 at 7-8: COVID-19 Test Reports dated 1/12/22 and 1/20/22]. Any gaps in the Plaintiff's testing were due to appointment availability; saliva testing required

---

[3] The letter is dated December 7, 2021. [Doc. 45-5: DPS HR Letter]. While the Plaintiff acknowledged in an interview with internal affairs on December 10, 2021, that he had heard from a supervisor that his religious exemption request had been denied [Doc. 45-10: Audio of 12/10/21 Interview], the Plaintiff states that he did not receive the letter until December 23, 2021. [Doc. 45-11: Verified Response to Request for Admission (RFA) No. 2]. There is nothing in the record to indicate that the Plaintiff was made aware of the availability of non-invasive saliva testing until the receipt of this letter on December 23, 2021.

scheduled appointments, and at times there were no available slots within the required seven-day window. [Doc. 49-2 at 37: Williams Decl. at ¶ 43]. The Plaintiff uploaded each of his saliva test results to the DPS tracker system.[4] [See id. at ¶¶ 41-42; Doc. 45-11 at 4: Verified Response to RFA No. 3].

On January 24, 2022, DPS terminated the Plaintiff's employment on the grounds that "[a]s of December 29, 2021," the Plaintiff had "failed to provide either documentation of fully vaccinated status, or weekly test results . . . as required." [Doc. 45-6: Separation Notice at 3].

## IV. DISCUSSION

### A. Title VII Claims

#### 1. Individual Defendants

As an initial matter, the Plaintiff cannot sustain claims under Title VII against his supervisors in their individual capacities. Individual defendants do not qualify as "employers" for the purpose of Title VII. Lissau v. So. Food Svc., Inc., 159 F.3d 177, 181 (4th Cir. 1988). As such, Title VII does not provide a cause of action against the individual Defendants named in this

---

[4] The Defendants deny having a record of any further test results after January 10, 2022. [See Doc. 45 at 4]. However, they have not offered any forecast of evidence on this point. In any event, at this juncture, the Court must accept the Plaintiff's forecast of evidence as true.

action in their individual capacities. See Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010). Accordingly, all of the Plaintiff's claims under Title VII against the individual Defendants in their individual capacities are hereby dismissed.

Further, to the extent that the Plaintiff attempts to assert Title VII claims against his supervisors in their official capacities, such claims are duplicative of his claims against DPS. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). Accordingly, all of the Plaintiff's claims under Title VII against Defendants Deaton, Smith, Stines, Ammons, and Cook in their official capacities are also dismissed.

### 2. Religious Accommodation Claim

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . ." 42 U.S.C. § 2000e-2(a)(1). To prove a prima facie religious accommodation claim, a plaintiff must show that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996) (quoting Philbrook v. Ansonia Bd. Of Educ., 757 F.2d 476, 481

(2nd Cir. 1985)). If the plaintiff succeeds in establishing a prima facie case, "the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008) (quoting Chalmers, 101 F.3d at 1019) (brackets and internal quotation marks omitted).

Here, the Plaintiff's religious accommodation claim fails because the Plaintiff's religious objections were adequately accommodated. While the Plaintiff asserted religious objections to the vaccine requirement, the DPS policy allowed for regular testing in lieu of vaccination. To the extent that the Plaintiff also objected to the invasive nature of nasal swab testing, that objection also was reasonably accommodated by DPS providing the option for saliva testing, which did not require any type of invasive procedure. Accordingly, the Plaintiff's religious accommodation claim must be dismissed.

### 3. Retaliation

To prove a prima facie claim of retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the employment action. Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010). "After the *prima facie* showing is made,

the burden then shifts to the employer to show that its purportedly retaliatory action was in fact the result of a legitimate nonretaliatory reason. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." Strothers v. City of Laurel, 895 F.3d 317, 328 (4th Cir. 2018) (internal citation, quotation marks, and brackets omitted).

Here, viewing the evidence in the light most favorable to the Plaintiff, the Plaintiff has presented a prima facie case of retaliation. He submitted a religious exemption request on November 22, 2021. The following day, a personnel complaint was filed against him. The Plaintiff was subsequently terminated from his employment for his failure to comply with the DPS testing requirements "as of December 29, 2021," even though the Plaintiff did not receive written notice of DPS's decision on his religious exemption request (and the availability of non-invasive testing) until December 23, 2021 and he substantially complied with the testing requirements once he received that notification. Under these circumstances, the Plaintiff has presented a sufficient forecast of evidence to show that DPS's purported nonretaliatory reasons for termination were merely a pretext for discrimination. Accordingly,

DPS's motion for summary judgment with respect to the Plaintiff's retaliation claim is denied.

## B. Disability Discrimination Claims

To prove a claim for failure to accommodate under the ADA, a plaintiff must first show that he is a qualified individual with a disability. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Here, the Plaintiff has failed to present any forecast of evidence from which a reasonable jury could conclude that he has a disability within the meaning of the statute. As such, the Plaintiff's claim for the failure to accommodate under the ADA must be dismissed.

## C. GINA Claims

Under GINA, it is an unlawful for an employer "to fail or refuse to hire . . . or otherwise to discriminate against any employee . . . because of genetic information with respect to the employee." 42 U.S.C. § 2000ff–1(a)(1). "Genetic information" is defined as "information about (i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. § 2000ff(4)(A). A "genetic test," in turn, is defined as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites,

that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A).

The Plaintiff has failed to present a forecast of evidence to support his GINA claims. Specifically, the Plaintiff has failed to present any evidence that he was subjected to improper "genetic testing" or otherwise discriminated against because of his "genetic information." Courts have held that COVID-19 tests do not analyze genetic information and therefore do not constitute "genetic testing" within the meaning of the statute. See Russo v. Patchogue-Medford School Distr., No. 22-CV-01569 (HG) (SIL), 2024 WL 149131, at *6 (E.D.N.Y. Jan. 12, 2024) (collecting cases), aff'd, 129 F.4th 182 (2d Cir. 2025). Moreover, courts have held that COVID-19 vaccines are not "genetic information" and therefore do not implicate GINA. See Millwood v. Tyson Foods, Inc., No. 8:23-cv-6004-DCC-KDW, 2024 WL 3666446, at *10 (D.S.C. June 14, 2024) (discussing cases). As such, the Plaintiff's GINA claims must be dismissed.

**V.  CONCLUSION**

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted with respect to the Plaintiff's claims against Defendants Randy L. Deaton, Brandon S. Smith, Harold F. Stines, Jr., Aaron C. Ammons, and Christopher W. Cook, and these Defendants are hereby dismissed with

prejudice from this action. The Motion is further granted with respect to the Plaintiff's religious accommodation claim under Title VII and his claims under the ADA and GINA, and such claims are dismissed with prejudice. The Motion is denied with respect to the Plaintiff's retaliation claim under Title VII as asserted against the North Carolina Department of Public Safety/North Carolina State Highway Patrol.

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 41] is hereby **GRANTED IN PART** and **DENIED IN PART**. The Defendants' Motion for Summary Judgment is **GRANTED** with respect to the Plaintiff's claims against Defendants Randy L. Deaton, Brandon S. Smith, Harold F. Stines, Jr., Aaron C. Ammons, and Christopher W. Cook, and these Defendants are hereby **DISMISSED WITH PREJUDICE** from this action. The Motion is further **GRANTED** with respect to the Plaintiff's religious accommodation claim under Title VII and claims under the ADA and GINA, and such claims are also **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with respect to the Plaintiff's retaliation claim under Title VII as asserted against the North Carolina Department of Public Safety/North Carolina State Highway Patrol.

**IT IS SO ORDERED.**

Signed: January 12, 2026

Martin Reidinger
Chief United States District Judge